UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBERT R GLENN, | § | |
| | § | |
|     Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:12-CV-326 |
| | § | |
| KATHLEEN M WHITE, | § | |
| | § | |
|     Defendant. | § | |

## ORDER

Before the Court is Defendant Kathleen M. White's (White's) Motion for Summary Judgment (D.E. 22). Robert R. Glenn brings this action as the Executor of the Estate of William B. Glenn, Sr., seeking damages allegedly arising from White's actions as Independent Executrix of the Estate of Anne Marie Glenn, W. Glenn's daughter.[1] White seeks a summary judgment, arguing (1) she neither owed nor breached a duty to Glenn; (2) any claims have been released; (3) Glenn's complaints are barred by res judicata; (4) Glenn's claims are barred by limitations; and (5) White has no personal liability under Texas law. For the reasons set out below, the Motion for Summary Judgment (D.E. 22) is GRANTED.

## FACTS

These parties have been involved in litigation for approximately 16 years. Part of the litigation took place in Texas and part in Indiana; and the litigation overlaps. The core of the dispute lies in a claim arising out of the treatment of a life insurance policy.

---

[1] For clarity, "Glenn" will refer to the claims of William B. Glenn, Sr. that, as of his death, are owned by his estate and represented by Robert Glenn as Executor of that estate. "Anne Glenn" will refer to the individual and "AMG" will refer to her probate estate.

Anne Glenn was a Corpus Christi, Texas physician who treated patients with spinal cord injuries. She conducted her medical practice through business entities (AMGMD Investments, Ltd. and AMGMD, PA) using funds procured in 1996 through two loans from Mercantile Bank (Bank). The total of the loans borrowed, in excess of $300,000, was secured by certain assets (both realty and personalty) owned by Anne Glenn and her businesses, along with a life insurance policy on Anne Glenn's life in the amount of $300,000. While the policy was pledged to secure the loan, Anne Glenn named her father, Glenn, as beneficiary.

Anne Glenn died of cancer in 1997, with her father surviving her as her sole heir-at-law. Anne Glenn's 1996 will named White as her Independent Executrix. Anne Glenn bequeathed her Indiana farm and antiques to her cousin, Sylvia Knowlton, and the rest of her estate was to be used to establish a foundation to assist persons with spinal cord injuries. Glenn was not provided for in the will and the insurance policy was not part of Anne Glenn's probate estate (AMG). However, AMG did include other assets that had been pledged as collateral to secure the Bank's loan.

Glenn, in an attempt to preserve the $300,000 value of his beneficiary interest in the insurance policy, filed claims on two fronts. First, he tried to force the Bank to recover its loan from its lien against the other pledged assets rather than from the insurance policy. That effort ultimately failed. Second, he filed a claim against AMG to impose his $300,000 claim on estate assets as a claim in subrogation of the Bank's rights, in substitution for the loss of insurance policy benefits to the Bank. In other words, because the Bank could have chosen to recover from secured interests in certain estate

assets but instead took the insurance policy, Glenn sought to substitute estate assets for his depleted interest in the policy.

In the meantime, Glenn made a bid to defeat Sylvia Knowlton's interest in the Indiana farm because no effort to probate Anne Glenn's will was timely filed in Indiana and he was the sole heir-at-law. The "Indiana litigation" included a state action and a federal action involving both Knowlton and White. Those cases were ultimately settled together in 2001. In exchange for a monetary settlement, Glenn quitclaimed any interest in the Indiana farm to Sylvia Knowlton. In connection with that settlement, the parties (including both Glenn and White) resolved and released all claims among them, known or unknown. The only exception to that release was Glenn's pending 1997 claim against AMG.

In 2003, the parties resolved Glenn's 1997 claim against AMG through an agreed judgment making him a "Class 8" unsecured creditor of AMG estate. However, Glenn has not recovered anything from the estate because, by the time the litigation involving AMG was concluded, the estate was insolvent. Glenn died in 2006. In the current action, Glenn seeks damages against White, Individually, for allegedly depleting the assets of AMG through unnecessary fees and costs, and failing to include the Indiana farm in the distributable assets (or require Knowlton to redeem the Indiana farm by providing for payment of an amount equivalent to the value of the farm, which money would be used to pay creditor claims).

## DISCUSSION

**A. Whether Glenn's Claims Were Released.**

The settlement of the Indiana litigation, to which Glenn and White were signatories, resolved by its terms all claims related to the ownership and application of the Indiana farm: Glenn received a monetary settlement and Knowlton received a deed to the farm. It also included a broad release by each of the signatories, said to apply to both their individual and representative capacities, of all claims made by and against each other, applying to "any, every and all claims, demands or causes of action accruing, arising, growing out of, or connected with any and all allegations made in the State or Federal actions, the Decedent's Estate, the Decedent's non-probate property, and any other possible controversy between them, including any claims or causes of action which could have been raised, whether known or not known, and whether foreseeable or not." D.E. 22-5, p. 2; D.E. 22-6. The only exception to this broad release was "the current claim of William Glenn pending in the State courts of Texas against the Estate [AMG] and Wells Fargo Bank."[2] D.E. 22-5, p. 2.

Glenn argues that this release should be strictly construed against White as the drafter pursuant to Indiana law. First, there is no evidence to support the assertion that White was the drafter of the release. Second, Glenn does not refer to any part of the release that is ambiguous and subject to any particular construction. Under Indiana law, which expressly governs the release, releases serve the important public policy of facilitating the orderly settlement of disputes. *Haub v. Eldridge*, 981 N.E.2d 96, 101

---

[2] Wells Fargo Bank is the successor in interest to Mercantile Bank.

(Ind.App. 2012). They are to be construed pursuant to general contract principles—giving effect to terms pursuant to their clear and ordinary meaning. *Id*.

In *Haub*, the release addressed "all claims, . . . however arising, up to the date of" the release and specifically referenced a particular accident. The court gave effect to both references by holding that the ordinary meaning of the release terms was that all claims as of the date of release, including but not limited to the specific accident, were released. *Id*. Likewise, the import of the release language Glenn agreed to is that he released all claims against White in her individual and representative capacity as of the date of the release, including but not limited to claims arising with respect to the disposition of the Indiana farm.

Thus White is entitled to summary judgment for any claim brought by Glenn related to the distribution of the Indiana farm to Knowlton. White is also entitled to summary judgment for any claim that fees and expenses incurred or paid prior to the date of the release in October 2001—whether for legal proceedings or accounting matters—were improperly charged to AMG or in any way reduced Glenn's ability to recover on his AMG claim. These claims are barred by the release.

According to the AMG Profit and Loss Detail attached as Exhibit A to Glenn's Complaint (D.E. 24-1, pp. 26-37), it appears that the number of post-October 2001 transactions are few. These are the only transactions on which Glenn may base any claim in this action.

B. **Whether White Owed or Breached a Duty to Glenn**.

Glenn seeks the recovery of money damages from White, individually, due to alleged breaches of fiduciary, statutory, and common law duties owed in the course of her independent administration of AMG. D.E. 1, pp. 1-2. As set out above, after protracted litigation involving AMG and its assets, Glenn became a Class 8 unsecured creditor of AMG. In her Motion for Summary Judgment, White asserts that she owed no duty to Glenn.

White argues that Texas law does not recognize a duty between an independent estate administrator and an unsecured creditor (as opposed to heirs and legatees). As explained at some length in *Mohseni v. Hartman*, 363 S.W.2d 652 (Tex. App.—Houston [1st Dist.] 2011, no pet.), the Texas Probate Code (now Texas Estates Code), which was originally codified in 1955, made it clear that independent executors stand in the shoes of the decedent on behalf of the heirs and legatees. *See* Acts 1955, 54th Leg., p. 88, ch. 55 (eff. Jan. 1, 1956). Any fiduciary duty is owed to those heirs and legatees, not to creditors of the estate. Likewise, any claim regarding negligent handling of the estate assets must fail because of a lack of a duty to support a negligence theory. *See also, In re Ernst*, No. 04-10-00319-CV, 2011 WL 192654 (Tex. App.—San Antonio Jan. 12, 2011, no pet.) (finding that independent executor's duty is owed only to devisees) (mem. op.).

Glenn admits that Texas common law applies to a finding of duty only to the extent that it does not conflict with Texas statutes. D.E. 23 (citing Tex. Probate Code § 32 (now Tex. Estates Code § 351.001)). The *Mohseni* court undertook a detailed review

of the provisions of the Texas Probate Code, and determined that a creditor's recourse is against the estate assets, not the executrix. In particular:

- Tex. Probate Code § 37:[3] the executor is a trustee for the heirs and legatees, only;

- Tex. Probate Code § 146:[4] the independent executor is statutorily required to pay claims in the proper order, a matter not placed in issue here;

- Tex. Probate Code § 147:[5] a suit against the executor for payment of a creditor's claim is only payable from estate assets;

- Tex. Probate Code § 149C:[6] aggrieved creditors—as interested parties—have statutory remedies of removing the executor and claims for payment against the estate, not the executor;

- Tex. Probate Code § 149A:[7] a creditor has a statutory right to an accounting;

- Tex. Probate Code § 230:[8] the executor's duty to the heirs and legatees is measured by a prudent man standard taking care of his own property for his own use.

*Mohseni, supra*. After its statutory analysis set out above, the *Mohseni* court concluded as follows:

> These provisions do not, however, give an unsecured creditor any guarantee against financial mismanagement or the insolvency of the estate. Such rights do not inure to an unsecured creditor against a debtor who is living. An unsecured creditor cannot bring a negligence action against a debtor who poorly manages his finances and cannot pay a

---

[3] Now Tex. Estates Code § 101.003.
[4] Now Tex. Estates Code § 403.051.
[5] Now Tex. Estates Code § 403.059.
[6] Now Tex. Estates Code § 404.003.
[7] Now Tex. Estates Code § 404.001.
[8] Now Tex. Estates Code § 351.101.

>  debt. . . .  Nor is there any indication in the Probate Code that such rights inure to an unsecured creditor after the debtor's death.

*Mohseni, supra* at 658.  *See also, FCLT Loans, LP v. Estate of Bracher*, 93 S.W.3d 469 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (independent executors owe no duty to unsecured creditors of the estate).

Both the *Mohseni* court and the *FCLT* court specifically disapproved of contrary authority that Glenn relies on because it (1) predates the Probate Code, (2) is more concerned with the relationship among competing creditors, rather than creating a duty owed by an executor to a creditor backed by the executor's personal assets, or (3) is based on specific language in a court order appointing the executor rather than on statutory provisions applicable to an independent administration.  *Mohseni, supra* at 657; *FCLT, supra* at 481.  Public interest supports the statutory creation of an independent administration method of probate and any effort to impose common law duties in favor of unsecured creditors conflicts with the executor's duty to the heirs and legatees.  *Mohseni*, at 660.  This is especially appropriate here, given that a Class 8 unsecured creditor can recover only after the estate administrator's fees are paid, making White's Class 2 claim against the estate superior to Glenn's.  Tex. Estate Code, § 355.102.

Glenn's claim is stated in terms of the theory of devastavit—an allegation that, as personal representative, White mismanaged an estate and allowed avoidable losses or errors.  D.E. 23.  He claims that White owes a fiduciary duty as a trustee of the decedent's estate pursuant to Tex. Probate Code § 37 (now Tex. Estates Code § 101.003), citing *Ertel v. O'Brien*, 852 S.W.2d 17 (Tex. App.—Waco 1993, writ denied) (relying in

part on *Pearce v. Stokes*, 291 S.W.2d 309 (Tex. 1956)). The *FCLT* court reviewed the *Ertel* holding and the Texas Supreme Court cases on which it was based, determining that the only basis for a fiduciary duty in that case was the court's order appointing the executor as opposed to the statutory scheme of independent administration at issue here.

It is also worth noting that the *Ertel* decision was partially based on the fact that the Bank, acting as independent executor, failed to comply with the statutory order of payment when it paid its own claims and others. A breach of fiduciary duty was found in favor of the estate as well as in favor of the creditor. The relevant provision, Tex. Probate Code § 328 (now Tex. Estates Code § 355.113), permits recourse against an independent executor and his or her bond if the executor refuses to pay a claim after a court order to do so. That provision is not at issue here. As demonstrated above, § 37 of the Probate Code has been held to afford a fiduciary duty only to the heirs and legatees or devisees.

Glenn's reliance on *Humane Society v. Austin Nat'l Bank*, 531 S.W.2d 574 (Tex. 1975) and *Main v. Browne*, 10 S.W. 571 (Tex. 1889) is misplaced in that the fiduciary duties expressed in those cases were owed by an executor in a dependent administration to a devisee or legatee. Likewise, in *Geeslin v. McElhenney*, 788 S.W.2d 683 (Tex. App.--Austin 1990, no writ) and *Todd v. Willis*, 1 S.W. 803 (Tex. 1886) (which also pre-dates the Texas Probate Code), although the executor was handling an independent administration, the fiduciary duty was owed to the estate beneficiary, instead of a creditor. These cases do not stand for the proposition that an independent executor owes

a fiduciary duty to an unsecured creditor in the absence of any breach of duty to a devisee or legatee.

Glenn also cites *In re Tomlin*, 266 B.R. 350 (Bankr. N.D. Tex. 2001). That opinion is based on cases determined to be distinguishable here (*Humane Society*, *Ertel*, and *Pearce*), and on other cases that are likewise distinguishable: *Ex parte Buller*, 834 S.W.2d 622, 626 (Tex. App.—Beaumont 1992, no writ) (dependent upon *Pearce*) and *James Cochran's Adm'rs v. Thompson*, 18 Tex. 652, 1857 WL 5019, at *3 (1857) (executors appointed pursuant to Louisiana law). The *Tomlin* case is not persuasive on the issues here.

A search for Texas cases using the term "devastavit" failed to render any cases involving conduct taking place after the 1955 advent of the Texas Probate Code. The Court thus bases its holding on *Mohseni* and *FCLT*, which are not contradicted by any applicable Texas Supreme Court authority. White, as independent administrator of AMG, does not owe a duty to Glenn, who stands only as a creditor of AMG with a Class 8 unsecured claim inferior to White's claims for administration fees and expenses. The Court GRANTS the Motion for Summary Judgment (D.E. 22) on the basis of no duty.

## CONCLUSION

For the reasons set out above, the Court GRANTS White's Motion for Summary Judgment (D.E. 22) because there is no duty owed by White to Glenn to support Glenn's claims. Additionally, the pre-October 2001 claims and all claims related to the status of the Indiana farm were released. The Court need not reach the remaining bases for the summary judgment (res judicata, limitations, and no personal liability under Texas law).

ORDERED this 9th day of January, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE